UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5;12-CV-00136-TBR

MARIA SMITH, as Administratrix of the
Estate of JAMES SMITH, Deceased,
Individually, and as Next Friend of
PBS, VMS, and ARS, unmarried infants                                            Plaintiff,

and

ACE AMERICAN INSURANCE CO.                                               Intervenor Plaintiff,

v.

PARKER-HANNIFIN CORPORATION                                                    Defendant.

## MEMORANDUM OPINION

This matter is before the Court upon the Motion for Summary Judgment of Defendant Parker-Hannifin Corporation ("Parker"), (Docket No. 111). Plaintiff Maria Smith filed a response, (Docket No. 114), and Parker filed a reply, (Docket No. 117). This matter is now ripe for review.

## Factual Background

This products liability case arises from an accident that occurred on September 12, 2011 at the Westlake Monomers Plant in Calvert City, Kentucky. On that date, Plaintiff's decedent, James Smith ("Smith"), was using an ultra-high pressure hose for "hydroblasting" in the course of his employment by PSC Industrial Outsourcing, LP ("PSC"). Otherwise known as "shotgunning" or "water blasting," this process involves directing high-pressure water from a hose and through a "shotgun," or lance, in order to clean heavy machinery. The parties and witnesses have referred to the hose as a "20,000 psi" hose. (*See* Docket No. 114 at 2.) When the hose suddenly ruptured, a powerful stream of water escaped, penetrating Smith's abdomen and ultimately causing his death.

Plaintiff claims that the hose was in a defective condition unreasonably dangerous to users, thereby causing Smith's accident and injuries. Specifically, she alleges that Parker defectively designed the hose by failing to include a built-in safety shroud. Plaintiff also contends that Parker failed to warn

1

users of the hose's known and foreseeable hazards. (Docket No. 1-1 at 7.) She seeks damages for Smith's medical expenses and pain and suffering, punitive damages, loss of earning, and loss of consortium. (Docket No. 1-1 at 8.)

## **Legal Standard**

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

Finally, while the substantive law of Kentucky is applicable to this case pursuant to *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Federal Rule of Procedure 56, not Kentucky's summary judgment standard as articulated in *Steelvest, Inc. v. Scansteel*

*Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991). *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), abrogated on other grounds by *Hertz Corp. v. Friend*, 130 S.Ct. 1181 (2010).

## Analysis

Plaintiff raises her claims under the strict liability doctrines articulated in the Restatement (Second) of Torts and later adopted by Kentucky courts.

> In 1966, our Supreme Court subscribed to the principle of strict liability as stated in section 402A of the Restatement (Second) of Torts. *See Dealers Transp. Co. v. Battery Distrib. Co.*, 402 S.W.2d 441, 446-47 (Ky. 1965). The strict liability principle of section 402A describes a product as defective for purposes of the application of strict liability as one "in a defective condition unreasonably dangerous to the user or consumer or to his property." Restatement (Second) of Torts § 402A (1965).

*Worldwide Equip., Inc. v. Mullins*, 11 S.W.3d 50, 55 (Ky. App. 1999). Strict liability "permit[s] injured parties a method of reaching back to the manufacturer or distributor of commercial products, following some form of failure on the product's part." *Id.* A products liability plaintiff may recover under a number of theories, including defective design, defective manufacture, and failure to warn; each theory is independent of the others. *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 250 (Ky. 1995). Here, Plaintiff's claims are grounded upon defective design and failure to warn.

### I. Superseding causes

Parker first alleges that two superseding causes bar its liability under any legal theory: first, that Smith was aware of the danger but nonetheless ignored it, and second, that PSC failed to properly maintain and replace the hose. Parker argues that Smith's injury was caused by his ignoring warnings and by PSC's keeping the aged hose in service, relieving Parker of liability if these actions rise to the level of a superseding cause. *NKC Hosps., Inc. v. Anthony*, 849 S.W.2d 564 (Ky. App. 1993); *Deutsch v. Shein*, 597 S.W.2d 141, 144 (Ky. 1980).

Kentucky courts have adopted the principles articulated in the Restatement (Second) of Torts § 440-53for determining when an intervening act becomes a superseding cause. *See House v. Kellerman*, 519 S.W.2d 380 (Ky. 1974). A superseding cause breaks the chain of causation, cutting off the liability of a defendant whose negligence did not proximately cause the plaintiff's injury. *Watters v. TSR, Inc.*, 904 F.2d 378, 383 (6th Cir. 1990). If an intervening act is not a "normal response" to the original tortious act, it is an "extraordinary" act that cuts off a defendant's causation. *See* Restatement (Second) of Torts § 444. If the act ultimately consists of facts "of such 'extraordinary rather than normal' or 'highly extraordinary' nature, unforeseeable in character, [it will] relieve the original wrongdoer of liability to the ultimate victim.'" *Montgomery Elevator Co. v. McCullough*, 676 S.W.2d at 776, 780 (Ky. 1984).

If a defendant asserts that another's act was a superseding cause of the plaintiff's injuries, and "there is no issue as to whether the act or event actually occurred, whether it constituted an independent cause superseding and eliminating the alleged negligence of the defendant as a legal cause should be determined by the court." *House*, 519 S.W.2d at 383. Here, there is no dispute as the whether the events at issue actually happened; therefore, the issues raised by this motion constitute matters of law. The Court must therefore determine whether Smith's using the hose without a shroud and PSC's keeping the hose in service constitute superseding causes, relieving Parker of liability.

In *NKC Hosp., Inc. v. Anthony*, the Kentucky Court of Appeals reviewed existing case law and articulated that a superseding cause possesses the following attributes:

> (1) an act or event that intervenes between the original act and the injury;
> (2) the intervening act or event must be of independent origin, unassociated with the original act;
> (3) the intervening act or event must, itself, be capable of bringing about the injury;
> (4) the intervening act or event must not have been reasonably foreseeable by the original actor;
> (5) the intervening act or event involves the unforeseen negligence of a third party [one other than the first party original actor or the second party plaintiff] or the intervention of a natural force;

4

> (6) the original act must, in itself, be a substantial factor in causing the injury, not a remote cause. The original act must not merely create negligent condition or occasion; the distinction between a legal cause and a mere condition being foreseeability of injury.

Bearing these elements in mind, the Court will consider each of Parker's arguments in turn.

Parker first argues that PSC's management was aware that a protective shroud was essential to the hose's safe use. It contends that PSC knew that shrouds were available, as it used them on other hoses, even requiring their use. (Docket No. 111-1 at 9.) Parker points to the "Top Ten Rules," a summary of safety procedures distributed to each PSC employee. The fifth safety rule instructs that "[s]ix (6) feet of hose shroud is required at the gun." (Docket No. 111-1 at 11.)

PSC's Shotgun Hydroblasting Procedure provides additional detail about the shroud requirement. Safety Procedural Requirements Rule 6 provides that "[s]ix (6) feet of high-pressure hose starting at the gun must be covered with a loose fitting rated hose shroud assembly to protect the gun operator in case of rupture." (Docket No. 111-15 at 4.) This standard was echoed by Richard Pitman, PSC's Division Health and Safety Director for the Industrial Services Division. (Docket No. 111-1 at 12.) Other management personnel agreed that using the hose without a shroud violated PSC safety rules. (*See* Docket No. 111-1 at 13.)

In addition, Parker asserts that John Gipson, a PSC manager, attended a Shared Learning session detailing a recent 20,000 psi hose failure and emphasizing that a shroud minimized the user's injury. (Docket No. 117 at 7.) Parker argues that this training session, along with the PSC policy requiring a shroud and its possession of catalogues offering such shrouds for sale, indicates that PSC management indisputably knew that a shroud should have been used and renders any associated risk "open and obvious." (Docket No. 117 at 7.)

Plaintiff responds that although PSC training materials advise that shotgunning must not be performed without a safety shroud, PSC employees testified that they did not know that safety shrouds

were available or necessary for 20,000 psi hoses. Plaintiff points to the testimony of a number of such employees who admitted that they were unaware that such a shroud was required or available. (Docket No. 114 at 12-14.)

Parker argues that where an employer and its managerial employees are aware of a danger, their failure to enforce safety protocols constitutes a superseding cause. *See Hercules Powder Co. v. Hicks*, 453 S.W.2d 583 (Ky. Ct. App. 1970); *Bryant v. Hercules Incorp.*, 325 F. Supp. 241 (W.D. Ky. 1970). However, the Court does not agree that the superseding cause analysis is such a narrow one. Rather, the Court focuses on the most essential of the *Anthony* characteristics: foreseeability. *Wilson v. Sentry Ins.*, 2014 WL 259472, at *3 (E.D. KY. Jan. 22, 2014) (citing *Scruggs v. Sperian Fall Arrest Sys., Inc.*, 2011 47 4744908, at *9 (W.D. Ky. Oct. 7, 2011) ("Whether the cause of action sounds in products liability . . . or in negligence . . . all of the cases turn on the issue of foreseeability.")). If the ultimate injury was reasonably foreseeable from the original actor's perspective, then other factors that cause the injury are not superseding causes. *NKC Hosps., Inc. v. Anthony*, 849 S.W.2d 564, 568 (Ky. Ct. App. 1993) (citations omitted). "The basic premise of a superseding cause is that it is 'extraordinary and unforeseeable.'" *Williams v. Ky. Dept. of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003) (citing *House v.* 519 S.W.2d at 383).

Parker directs the Court to *Wilson*, 2014 WL 259472, wherein an employee was injured while using a machine in the course of her employment. The court concluded that her employer's negligence constituted a superseding cause, cutting off the manufacturer's liability. As in the instant case, the employer's use of the machine violated both safety protocol and company procedure and was contrary to the warnings in the manufacturer's manual. However, the facts of *Wilson* are distinguishable from those at issue here. The *Wilson* machine was not unsafe when used in a normal fashion, but the purchaser/company altered it in an atypical manner, negating safety features inherent in the machine's manufacture and design. *See id.* at *3. This egregious misuse was unforeseeable and extraordinary, rendering it a superseding cause and insulating the manufacturer from liability.

By contrast, such blatant misuse does not exist here. Although a jury might reasonably apportion some fault for the accident to PSC, its conduct was not so "extraordinary" or "unforeseeable" as to insulate Parker from liability. *House v. Kellerman*, 519 S.W.2d at 383. Therefore, the subsequent actions do not constitute superseding causes.

Parker also argues that PSC knew that the hose should have been removed from service, given its frayed condition. PSC policies specify that "[h]oses with broken or frayed wire braid shall be removed from service" and that "[h]oses with exposed braid that is unbroken shall be repaired by taping . . . ." (Docket No. 111-15 at 4.) It is undisputed that the hose at issue had been cut and worn, leaving exposed braid. Parker asserts that the hose would not have caused the injury had it been removed from service when the braids became exposed. (Docket No. 117 at 6.) Parker argues that PSC's maintaining the hose past its useful life and failing to enforce its own safety policy constitute superseding causes.

Parker devotes much of its memorandum to arguing that the hose should have been removed from service prior to Smith's accident. The parties agree that the hose was less than two years old, but dispute its condition. Although Parker claims that the hose had been "severely misused and abused," (Docket No. 111-1 at 1), Plaintiff counters that any damage was caused by "normal, routine use." (Docket No. 114 at 11.) In the instant motion, Parker argues that the hose was unusable prior to Smith's accident and should have been removed from service. It contends that the hose's plastic cover had been worn or cut, leaving the outer layer of braided wire reinforcement exposed. Parker points to the deposition of Steven Haubert, Plaintiff's expert regarding hose design, concluding that the hose should have been removed from service prior to Smith's accident. (Docket No. 111-1 at 19-20.) Matthew Blossom, the PSC Project Manager, also testified that a hose with the metal braid exposed should have been removed from service. (Docket No. 111-29 at 45:4-47:6.) Parker argues that these facts establish PSC's awareness that the hose should not have been in use based on its weakened condition.

7

However, this issue presents a triable question of fact, as Plaintiff notes the testimony of several other PSC employees who concluded that the wire braid was not broken or frayed, but merely exposed, and that it did not need to be removed from service. (Docket No. 114 at 18.) Plaintiff also points to Pittman's statement that "at the time the industry standard was that visible braids were okay." (Docket No. 111-21 at 9.) Moreover, the rupture at issue did not occur at these exposed areas, but where the hose fitting was connected to the "shotgun."

> Steven Haubert, Plaintiff's expert on high pressure hoses opined:
>> When the hose ultimately failed, it did so in a completely predictable manner and location – a location that should have been covered with a safety shield. A safety shield would have contained the pressure of the escaping fluid and prevented the injury and death of James Smith. A safety shield for this hose was not even offered as an option by Parker Hannifin. An ultra-high pressure hose that can be used in a hand held application, but does not include a safety shield is defective and unreasonably dangerous in my opinion.

(Docket No. 114-3 at 5-6.)

In addition, Parker contends that PSC opted against purchasing other hoses with integrated shrouds, leaving Plaintiff unable to prove that had a hose with a built-in safety shield been available, Parker would have purchased it. (Docket No. 117 at 11.) As there is conflicting evidence that presents a genuine issue of material fact on these issues, summary judgment is not appropriate at this time. The Court will not facilitate the disposition of factual issues at this preliminary stage.

Parker further argues that Smith himself knew that a shroud should be used and that Parker should not be held liable for an obvious danger that Smith should have realized. (Docket No. 111-1 at 9-10.) It points to Smith's training in safe hydroblasting, which included watching a safety video informing employees of the policy requiring all high pressure hoses to be inspected and tested according to the manufacturer's instructions. Furthermore, Parker notes that Smith passed the requisite examination before he engaged in hydroblasting activities, indicating his awareness that protective shrouds should be

used. (Docket No. 111-1 at 10.) Prior to beginning the job at issue, Smith completed a Job Safety Analysis ("JSA") and specified that he had reviewed the relevant "Top 10 Book," which admonishes users not to employ a hose without six feet of shroud attached. According to Parker, Smith indisputably knew that he needed to review the Top Ten book before beginning the job, having attended a safety meeting on the day of the accident at which PSC's safety program was reviewed. (Docket No. 111-1 at 12.)

However, whether the risk was open and obvious is question properly submitted to a jury if there is a fact question for the jury, as there is a genuine factual dispute. *See Kromer v. Med. Found. of Jefferson Med. Soc. Inc.*, 2005 WL 327267, at *3 (Ky. Ct. App. 2005) (noting that "testimony and evidence created an issue of fact whether the claimed risk was open and obvious"). Moreover, the Kentucky Court of Appeals has explained:

> Where the negligent conduct of the actor . . . creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force . . . does not relive the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.

*Id.* at 569. As noted above, although other actors perhaps bear some degree of fault, this fact does not absolve Parker of its own potential liability. Parker's position that it was "extraordinary and unforeseeable" that a person would use an unshielded hose is unsound. Because Smith's injury was arguably foreseeable to Parker, the other factors that brought about the injury are not superseding causes. *See Williams*, 113 S.W.3d at 145. For these reasons, the Court will deny Parker's motion for summary judgment upon this count.

## II.     Duty to warn

Parker next argues that it is entitled to summary judgment on Plaintiff's claim for negligent failure to warn. To withstand summary judgment, a plaintiff alleging failure to warn must provide evidence that: "(1) Defendants had a duty to warn; (2) the warnings Defendants gave were inadequate;

and (3) the inadequate warnings were the proximate cause of the plaintiff's injuries." *Manuel v. Traditional Sporting Goods, Inc.*, 2011 WL 6091710 at *6 (E.D. Ky. Dec. 7, 2011) (citing *Stewart v. Gen. Motors*, 102 Fed. Appx. 961, 964 (6th Cir. June 25, 2004) (102 Fed. Appx. 961, 964)).

Plaintiff alleges that Parker's warning label did not clearly require hoses with exposed wire braids to be removed from service, nor did it advise users of the dangers of failing to do so. Plaintiff further emphasizes that Parker's warning label fails to caution users against using the hose without a safety shield, despite its knowledge that such hoses were subject to failure. Plaintiff's warning expert, Dr. Kenneth Laughery, testified that this deficit causes the warning to fall short. He also noted that the warning label does not advise that the hose must be removed from service if its wire braids are exposed, rendering the warning inadequate and the hose defective and unreasonably dangerous. Dr. Laughery also criticizes the label as insufficiently durable and not capable of lasting the life of the hose. Finally, Dr. Laughery highlighted the label's reference to secondary documents, including Parker's Safety Guide; Dr. Laughery noted that the Guide failed to reference the need for a safety shield. (Docket No. 114-5 at 5-6.)

The warning affixed to Parker's high pressure hoses provides:

- Do not use if hose is kinked, cut, crushed, abraded, stretched, [or] cut . . . .
- Improper selection or improper use of product can cause DEATH, personal injury and property damage. Fluid escaping under extremely high pressure can cause bodily injection injury.
- Inspect hose for damage prior to EACH use.
- Before selecting or using this product, review and understand the Parker Safety Guide . . . .

(Docket No. 111-25.) The warning includes an illustration of the potential injuries associated with a hose failure. (Docket No. 114-4.) It also references both the Parker Safety Guide and the Parker website. The Parker Safety Guide instructs users that hoses "can and do fail without warning for many reasons" and instructs that "[a]ny Hose that has been kinked or bent to a radius smaller than the minimum bend radius, and any Hose that has been cut or cracked or is otherwise damaged should be removed and discarded." (Docket No. 111-26 at 2.) The Hose Fitting Maintenance and Replacement Instructions advise that a

10

"[d]amaged, cracked, cut or abraded cover" with "any reinforcement exposed" requires "immediate shutdown and replacement of the Hose assembly." (Docket No. 111-26 at 4.)

However, Plaintiff emphasizes that although other hoses perhaps displayed warnings, the hose used by Smith did not; rather, there was no warning label on the hose on the day of the accident, as reflected in the photographs taken after the accident. (Docket No. 114 at 17.) Although Parker argues that Smith had used another Parker hose to which the warning was affixed, (Docket No. 111-1 at 30), Plaintiff contends that no evidence reflects that Brad Smith ever used a hose bearing the warning label. (Docket No. 114 at 17.)

Kentucky law requires manufacturers "to warn of dangers known to them but not known to persons whose use of the product can reasonably be anticipated." *Watters*, 904 F.2d at 381 (citing *Post*, 473 S.W.2d 516). A warning "must be fair and adequate, to the end that the user, by the exercise of reasonable care on his own part, shall have a fair and adequate notice of the possible consequences of use or even misuse." *Post*, 437 S.W.2d at 520. For example,

> [I]t may be doubted that a sign warning, "Keep off the Grass," could be deemed sufficient to apprise a reasonable person that the grass was infected with deadly snakes. In some circumstances a reasonable man might well risk the penalty of not keeping off the grass although he would hardly be so daring if he knew the real consequences of his failing to observe the warning sign.

*Id.* at 520.

In *Post*, the Kentucky Supreme Court defined an adequate warning as one with "such degree of warning as will forward to the user of the equipment, by the exercise of reasonable care on his own part, fair and adequate notice of the possible consequences of use or even misuse of the product." *Id.* at 522. Moreover, a manufacturer owes this duty to the product's ultimate user. *See id.*; *see also Montgomery Elevator*, 676 S.W.2d at 776. *Montgomery Elevator* stressed that although the manufacturer's warnings and instructions may have been delivered to a plaintiff's employer, which purchased the product, this fact

does not alter its liability to the product's ultimate user—the employee. *Id.* at 781. That is, warning the employer/purchaser does not necessarily discharge the duty to warn the employee/ultimate user.

Here, the burden rests with Parker to demonstrate that no reasonable jury could find that the arguably inadequate warning constituted a substantial factor contributing to the accident. Parker has not satisfied this burden. *See Morales v. Am. Honda Motor Co., Inc.*, 71 F.3d 531, 538 (6th Cir. 1995). "With respect to failure to warn, the character of warnings that accompany the product is generally an evidentiary consideration in deciding whether a product is unreasonably unsafe." *Morales v. Am. Honda Motor Co., Inc.*, 71 F.3d 531, 536 (6th Cir. 1995) (citing *Montgomery Elevator*, 676 S.W.2d at 781). Because reasonable persons could conclude that Parker's warning did not provide "a fair and adequate notice of the possible consequences of use or even misuse," Plaintiff's proof raises a jury issue concerning the warning's adequacy. *See Post*, 437 S.W.2d at 520.

Parker next argues that Plaintiff's warning defect claim rests entirely upon the testimony of Dr. Kenneth Laughery.[1] At deposition, Dr. Laughery opined that although the warning adequately warned users against using a hose that was cut or kinked, it should have explained to users that the hose being cut or abraded could result in a failure that could cause death. (Exhibit 111-24 at 65:12-66:14.) However, Dr. Laughery was unable to say that the accident would have been prevented by a warning specifying that a safety shroud should be used. Parker argues that this uncertainty precludes Plaintiff from establishing the requisite causation.

In response, Plaintiff argues that she is entitled to the presumption that had an adequate warning been provided by Parker, Smith and PSC would have heeded it and acted so as to minimize the risks. The

---

[1] Parker also alleges that Plaintiff's expert, Dr. Alan Johnson, testified that the warning labels affixed to Parker hoses and in its safety guide are adequate. However, the Court disagrees with this characterization of Dr. Johnson's testimony. Dr. Johnson testified that he did not intend to offer opinions "regarding the adequacy of the warning label itself [or] the adequacy of how that label was attached to the hose." (Exhibit 20, p. 28:4-9.), and he does not purport to be an expert on warning labels. (Docket No. 111-23 at 27 ("I haven't done any work on the warning labels. I defer to our experts on warning labels.")).

Court agrees that Plaintiff is not required to offer proof that either PSC or Smith would have followed an adequate warning. *See Bryant v. Hercules*, 325 F. Supp. 241, 246 (W.D. Ky. 1970) (quoting Restatement (Second of Torts) § 402A, comment j). "[I]n the absence of an adequate warning, the defendant cannot shift to the plaintiff the burden of proving that [he] would not have misused the product regardless" by failing to follow an adequate warning. *Leonard v. Uniroyal, Inc.*, 765 F.2d 560, 567-68 (6th Cir. 1985). Therefore, the Court agrees that Dr. Laughery's testimony is not fatal to Plaintiff's claim and that genuine issues of material fact exist as to causation. Accordingly, Parker's motion will not be granted at this time.

**Conclusion**

For the reasons discussed above, Defendant Parker-Hannifin Corporation's Motion for Summary Judgment, (Docket No. 111), will be DENIED. An appropriate Order will issue concurrently with this opinion.